1  GIBSON, DUNN & CRUTCHER LLP
   HARRIS M. MUFSON (*pro hac vice forthcoming*)
2      HMufson@gibsondunn.com
   200 Park Avenue
3  New York, New York  10166-0193
   Telephone:    212.351.4000
4  Facsimile:    212.351.4035

5  GIBSON, DUNN & CRUTCHER LLP
   KATHERINE V.A. SMITH, SBN 247866
6      KSmith@gibsondunn.com
   333 South Grand Avenue
7  Los Angeles, California  90071
   Telephone:    213.229.7000
8  Facsimile:    213.229.7520

9  GIBSON, DUNN & CRUTCHER LLP
   KATIE M. MAGALLANES, SBN 300277
10     KMagallanes@gibsondunn.com
   JESSICA M. PEARIGEN, SBN 317286
11     JPearigen@gibsondunn.com
   3161 Michelson Drive
12 Irvine, California  92612-4412
   Telephone:    949.451.3800
13 Facsimile:    949.451.4220

14 Attorneys for Defendants
   WARBY PARKER INC. (*formerly known as* JAND, INC.)
15 and WARBY PARKER RETAIL, INC.

16                    IN THE UNITED STATES DISTRICT COURT

17              FOR THE NORTHERN DISTRICT OF CALIFORNIA

18

19 | ROBERT CHERY, an individual, on behalf of himself, and on behalf of all persons similarly situated, | CASE NO. 5:23-CV-02611 |
   |---|---|
20 | | **NOTICE OF REMOVAL OF CLASS ACTION** |
   | Plaintiffs, | |
21 | | |
   | v. | |
22 | | |
23 | WARBY PARKER INC. f/k/a JAND, INC., a Delaware corporation; WARBY PARKER RETAIL, INC., a Delaware corporation; and DOES 1-50, Inclusive, | Date Action Filed: April 11, 2023 |
24 | | |
25 | Defendants. | |
26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

**Page**

I.   TIMELINESS OF REMOVAL ................................................................................... 1

II.  SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL ............................ 1

    A.   The Proposed Class Consists of More Than 100 Members .......................... 3

    B.   Warby Parker and Plaintiff Are Not Citizens of the Same State ................. 3

    C.   The Amount in Controversy Exceeds $5 Million ........................................ 5

        1.   Plaintiff's Allegations Regarding Waiting Time Penalties Place $1.3 Million in Controversy ...................................................................... 6

        2.   Plaintiff's Claim for Alleged Violation of California Labor Code Section 226 Places Another $631,050 in Controversy ................................ 9

        3.   Plaintiff's Allegations Regarding Meal Periods and Rest Breaks Place At Least an Additional $2.2 Million in Controversy ..................................... 11

        4.   Plaintiff's Allegations Regarding Unpaid Overtime Place At Least an Additional $676,742 in Controversy ............................................................ 13

        5.   Plaintiff's Reimbursement Allegations Place At Least an Additional $98,910 in Controversy ...................................................................... 14

        6.   Plaintiff's Request for Attorneys' Fees Places Another $351,675 in Controversy ....................................................................................... 16

        7.   In Total, Just Six of Plaintiff's Eight Causes of Action, Including Attorneys' Fees, Place More Than $5.2 Million in Controversy ................... 18

III. THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER ............................. 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page

CASES

*Anderson v. Starbucks Corp.*,
556 F. Supp. 3d 1132 (N.D. Cal. 2020) ......................................................................15

*Arias v. Residence Inn by Marriott*,
936 F.3d 920 (9th Cir. 2019)................................................................................5, 6, 16

*Ayala v. Cox Auto., Inc.*,
2016 WL 6561284 (C.D. Cal. Nov. 4, 2016) ................................................................4

*Barcia v. Contain-A-Way, Inc.*,
2009 WL 587844 (S.D. Cal. Mar. 6, 2009) ................................................................17

*Campbell v. Vitran Exp., Inc.*,
471 F. App'x 646 (9th Cir. 2012) .................................................................................5

*Cavada v. Inter-Cont'l Hotels Grp., Inc.*,
2019 WL 5677846 (S.D. Cal. Nov. 1, 2019) ..............................................................15

*Crummie v. CertifiedSafety, Inc.*,
2017 WL 4544747 (N.D. Cal. Oct. 11, 2017)...........................................................7, 8

*Dart Cherokee Basin Op. Co., LLC v. Owens*,
574 U.S. 81 (2014)..................................................................................................4, 5, 6

*Ehrman v. Cox Commc'ns, Inc.*,
932 F.3d 1223 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2566 (2020) ..........................4

*Guglielmino v. McKee Foods Corp.*,
506 F.3d 696 (9th Cir. 2007)......................................................................................17

*Gurzenski v. Delta Air Lines, Inc.*,
2021 WL 5299240 (C.D. Cal. Nov. 12, 2021) ............................................................15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)....................................................................................17

*Henry v. Inmotion Entertainment Grp., LLC*,
Case No. CGC-18-565643 (S.F. Sup. Ct. April 8, 2019)............................................17

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010).........................................................................................................4

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page

*Jasso v. Money Mart Exp., Inc.*,
 2012 WL 699465 (N.D. Cal. Mar. 1, 2012) .................................................................13

*Jimenez v. Allstate Ins. Co.*,
 2011 WL 65764 (C.D. Cal. Jan. 7, 2011) ....................................................................14

*Kantor v. Wellesley Galleries, Ltd.*,
 704 F.2d 1088 (9th Cir. 1983) ......................................................................................3

*Korn v. Polo Ralph Lauren Corp.*,
 536 F. Supp. 2d 1199 (E.D. Cal. 2008) .........................................................................6

*LaCross v. Knight Transp. Inc.*,
 775 F.3d 1200 (9th Cir. 2015) ......................................................................................5

*Lewis v. Verizon Commc'ns, Inc.*,
 627 F.3d 395 (9th Cir. 2010) ........................................................................................5

*Lopez v. Adesa, Inc.*,
 2019 WL 4235201 (C.D. Cal. Sept. 6, 2019) ................................................................4

*Lucas v. Michael Kors (USA), Inc.*,
 2018 WL 2146403 (C.D. Cal. May 9, 2018) ...............................................................17

*Mack v. Edward R. Marszal Enters., Inc.*,
 Case No. 34-2019-00262259 (Sacramento Sept. Ct. June 24, 2021) ..........................17

*Mamika v. Barca*,
 68 Cal. App. 4th 487 (1998) .........................................................................................7

*Marentes v. Key Energy Servs. Cal., Inc.*,
 2015 WL 756516 (E.D. Cal. Feb. 23, 2015) .................................................................7

*Mejia v. DHL Express (USA), Inc.*,
 2015 WL 2452755 (C.D. Cal. May 21, 2015) .............................................................10

*Murphy v. Kenneth Cole Prods., Inc.*,
 40 Cal. 4th 1094 (2007) ..............................................................................................11

*Pineda v. Bank of Am., N.A.*,
 50 Cal. 4th 1389 (Cal. 2010) .........................................................................................6

*Ray v. Wells Fargo Bank, N.A.*,
 2011 WL 1790123 (C.D. Cal. May 9, 2011) ...............................................................13

iii

Gibson, Dunn & Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Salter v. Quality Carriers, Inc.*,
   974 F.3d 959 (9th Cir. 2020) ..........................................................................................5, 6

*Schlieser v. Sunrise Senior Living Management, Inc.*,
   Case No. 8:19-CV-00443-JAK (C.D. Cal. May 16, 2022) ...........................................17

*Soto v. Tech Packaging, Inc.*,
   2019 WL 6492245 (C.D. Cal. Dec. 3, 2019) .................................................................10

*Std. Fire Ins. Co. v. Knowles*,
   568 U.S. 588 (2013) ...........................................................................................................5

*Tajonar v. Echosphere, L.L.C.*,
   2015 WL 4064642 (S.D. Cal. July 2, 2015) .....................................................................7

*Vallejo v. Sterigenics U.S., LLC*,
   2021 WL 2685348 (S.D. Cal. June 29, 2021) .................................................................15

**STATUTES**

28 U.S.C. § 84(c) ......................................................................................................................19

28 U.S.C. § 1332 ................................................................................................................ *passim*

28 U.S.C. § 1441 ...............................................................................................................1, 2, 19

28 U.S.C. § 1446 .............................................................................................................1, 19, 20

28 U.S.C. § 1453 ..................................................................................................................1, 19

Cal. Civ. Proc. Code § 338(a) ...............................................................................................6, 11

Cal. Civ. Proc. Code § 340(a) ..................................................................................................10

Cal. Civ. Proc. Code § 382 .........................................................................................................2

Cal. Code Regs. tit. 8, § 13520 ...................................................................................................7

Cal. Lab. Code § 201 ...................................................................................................................7

Cal. Lab. Code § 202 ...................................................................................................................7

Cal. Lab. Code § 203 ...........................................................................................................6, 7, 8

Cal. Lab. Code § 226 ......................................................................................................... *passim*

NOTICE OF REMOVAL OF CLASS ACTION
CASE NO. 5:23-CV-02611

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

**Page**

Cal. Lab. Code § 226.7 ...........................................................................................................11

Cal. Lab. Code § 512 .............................................................................................................11

Cal. Lab. Code § 1194(a) .......................................................................................................17

Cal. Lab. Code § 2802 ................................................................................................15, 16, 17

Gibson, Dunn &
Crutcher LLP

NOTICE OF REMOVAL OF CLASS ACTION
CASE NO. 5:23-CV-02611

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF ROBERT CHERY AND HIS COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT**, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711, Defendants Warby Parker Inc. (*formerly known as* JAND, Inc.) and Warby Parker Retail, Inc. (collectively, "Warby Parker" or "Defendants") hereby remove to the United States District Court for the Northern District of California the above-captioned state court action, originally filed as Case No. 23CV414694 in Santa Clara County Superior Court, State of California.  Removal is proper on the following grounds:

## I.     TIMELINESS OF REMOVAL

1.     Plaintiff Robert Chery ("Plaintiff") filed a putative Class Action Complaint against Warby Parker in Santa Clara County Superior Court, State of California, Case No. 23CV414694, on April 11, 2023.  Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the (a) Summons, (b) Class Action Complaint, (c) Civil Case Cover Sheet, (d) Order Deeming Case Complex and Staying Discovery and Responsive Pleading Deadline, (e) Civil Lawsuit Notice, (f) ADR Stipulation and Order; (g) Proof of Service of Summons on Warby Parker Inc., and (h) Proof of Service of Summons on Warby Parker Retail, Inc. are attached as Exhibits A–H to the Declaration of Katherine V.A. Smith ("Smith Decl.") filed concurrently here.

2.     According to the Proofs of Service of Summons, Plaintiff personally served Warby Parker Inc. and Warby Parker Retail, Inc. on April 26, 2023.  *See* Smith Decl., Exs. G–H, Proofs of Service of Summons.  Consequently, service was completed on April 26, 2023.  This notice of removal is timely because it is filed within 30 days after service was completed.  28 U.S.C. § 1446(b).

## II.    SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL

3.     Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1453 because this Court has subject matter jurisdiction over this action and all claims asserted against Warby Parker pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

4.     CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action."  28 U.S.C. § 1332(d)(8).  This case is a putative "class action"

Gibson, Dunn & Crutcher LLP

1

under CAFA because it was brought under California Code of Civil Procedure § 382, California's state statute or rule authorizing an action to be brought by one or more representative persons as a class action.  *See* 28 U.S.C. § 1332(d)(1)(B); *see also* Smith Decl., Ex. B, Compl. ¶ 14.

5.  Plaintiff requests "[t]hat the Court certify the [causes of action] as a class action."  *Id.*, Compl., Prayer for Relief.  He seeks to represent "all persons who are or previously were employed by [Warby Parker] in California and classified as non-exempt employees . . . at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court."  *Id.*, Compl. ¶ 49.

6.  In his Complaint, Plaintiff alleges eight causes of action against Warby Parker: (1) Unlawful Business Practices; (2) Failure to Pay Minimum Wages; (3) Failure to Pay Overtime Compensation; (4) Failure to Provide Required Meal Periods; (5) Failure to Provide Required Rest Periods; (6) Failure to Provide Accurate Itemized Statements; (7) Failure to Pay Wages When Due; and (8) Failure to Reimburse Employees for Required Expenses.

7.  Among other things, Plaintiff alleges that putative class members are entitled to unpaid wages, statutory penalties, and attorneys' fees and costs.  *Id.*, Compl., Prayer for Relief.

8.  Removal of a class action is proper if: (1) there are at least 100 members in the putative class; (2) there is minimal diversity between the parties, such that at least one class member is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.  *See* 28 U.S.C. §§ 1332(d), 1441.

9.  Warby Parker denies any liability in this case both as to Plaintiff's individual claims and as to the claims he seeks to pursue on behalf of the putative class, and further maintains that this action was improperly filed in court because Plaintiff agreed to binding individual arbitration of the claims asserted in this action.  Warby Parker also intends to oppose class certification on multiple grounds, including that (a) Plaintiff must arbitrate his claims against Warby Parker individually pursuant to the binding and enforceable arbitration agreement and class action waiver executed by Plaintiff and (b) class treatment is inappropriate under these circumstances in part because there are many material differences between the experiences of Plaintiff and the putative class members he seeks to represent, as well as amongst the putative class members.  Warby Parker expressly reserves all rights to move to

Gibson, Dunn & Crutcher LLP

1   compel individual arbitration of Plaintiff and absent class members, oppose class certification, and

2   contest the merits of all claims asserted in the Complaint.  However, for purposes of the jurisdictional

3   requirements for removal only, the allegations in Plaintiff's Complaint identify a putative class of more

4   than 100 members and put in controversy, in the aggregate, an amount that exceeds $5 million.  *See id.*

5   § 1332(d).

6   **A.      The Proposed Class Consists of More Than 100 Members**

7          10.     Based on Plaintiff's allegations, this action satisfies CAFA's requirement that the

8   putative class contain at least 100 members.  *See id.* § 1332(d)(5)(B).

9          11.     Plaintiff's proposed class consists of all persons who are or previously were employed

10  by [Warby Parker] in California and classified as non-exempt employees . . . at any time during the

11  period beginning four (4) years prior to the filing of this Complaint and ending on the date as

12  determined by the Court."  Smith Decl., Ex. B, Compl. ¶ 49

13         12.     Warby Parker employed at least 735 part-time and full-time, non-exempt individuals in

14  California at Warby Parker Inc. between April 11, 2020 and April 11, 2023.  Declaration of Chelsea

15  Kaden ("Kaden Decl.") ¶ 4(a).  Based on Plaintiff's class definition, the putative class contains at least

16  735 members.

17         13.     This putative class size estimate is highly conservative because it excludes (a) all full-

18  time and part-time non-exempt employees who worked for Warby Parker Inc. between April 11, 2019

19  and April 11, 2020, (b) all temporary non-exempt employees, and (c) both full-time and part-time non-

20  exempt employees who have been hired by Warby Parker Inc. in California since April 11, 2023.

21         14.     Accordingly, while Warby Parker denies that class treatment is permissible or

22  appropriate, the proposed class consists of well over 100 members.

23  **B.      Warby Parker and Plaintiff Are Not Citizens of the Same State**

24         15.     Under CAFA's minimum diversity of citizenship requirement, the plaintiff or any

25  member of the putative class must be a citizen of a different state from any defendant.  *See* 28 U.S.C.

26  § 1332(d)(2)(A).

27         16.     A person is a citizen of the state in which he or she is domiciled.  *Kantor v. Wellesley*

28  *Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  A party's residence is prima facie evidence of

Gibson, Dunn &
Crutcher LLP

his or her domicile. *Ayala v. Cox Auto., Inc.*, 2016 WL 6561284, at *4 (C.D. Cal. Nov. 4, 2016) (citing *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)). Additionally, an allegation of minimal diversity is sufficient where the notice of removal provides a "short and plain statement . . . based on information and belief." *Ehrman v. Cox Commc'ns, Inc*., 932 F.3d 1223, 1228 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2566 (2020); *see also Dart Cherokee Basin Op. Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (explaining that a notice of removal need include only "a short and plain statement of the grounds for removal" and "courts should apply the same liberal rules to removal allegations that are applied to other matters of pleading" (internal quotations and alteration omitted)).

17.     According to information Plaintiff provided to Warby Parker, Plaintiff resided in California until at least January 8, 2023, and has not alleged in his Complaint that he resides outside the state. Kaden Decl. ¶ 3. Plaintiff is therefore considered a citizen of California for purposes of removal under CAFA. *See Lopez v. Adesa, Inc.*, 2019 WL 4235201, at *1 n.2 (C.D. Cal. Sept. 6, 2019) (denying remand and noting that "a citation to [defendant's] own records [was sufficient under the plausibility standard] to establish [p]laintiff's citizenship); *Ayala*, 2016 WL 6561284, at *4. Moreover, it is reasonable to assume that a substantial number of the putative class members, who by definition are or have been recently "employed . . . in California," are also domiciled in California. Smith Decl., Ex. B, Compl. ¶ 49; *see also Ehrman*, 932 F.3d at 1228.

18.     A corporation is a citizen of its state of incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c)(1). Warby Parker Inc. and Warby Parker Retail, Inc. are Delaware corporations with their principal places of business in New York. Kaden Decl. ¶ 2.

19.     The Supreme Court has interpreted the phrase "principal place of business" in 28 U.S.C. § 1332(c)(1) & (d)(2)(A) to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities," i.e., its "nerve center," which "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). Warby Parker's headquarters, which is located in New York, constitutes its "nerve center" under the test adopted in *Hertz* because Warby Parker's high-level officers oversee the corporation's activities from that

1  location.  Kaden Decl. ¶ 2.  As such, Warby Parker is a citizen of Delaware and New York.  *See* 28

2  U.S.C. § 1332(c)(1).

3    20.    Accordingly, Plaintiff and Defendants are citizens of different states and CAFA's

4  minimal diversity requirement is met.  28 U.S.C. § 1332(d)(2)(A).

**C.    The Amount in Controversy Exceeds $5 Million**

6    21.    CAFA requires that the amount in controversy in a class action exceed $5 million,

7  exclusive of interests and costs.  *Id.* § 1332(d)(2).  In calculating the amount in controversy, a court

8  must aggregate the claims of all individual class members.  *Id.* § 1332(d)(6).

9    22.    "[A] defendant's notice of removal need include only a plausible allegation that the

10  amount in controversy exceeds the jurisdictional threshold."  *Dart*, 574 U.S. at 89.  To satisfy this

11  burden, a defendant may rely on a "reasonable" "chain of reasoning" that is based on "reasonable"

12  "assumptions."  *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201–02 (9th Cir. 2015).  "An

13  assumption may be reasonable if it is founded on the allegations of the complaint."  *Arias v. Residence

14  Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019); *see also Salter v. Quality Carriers, Inc.*, 974 F.3d

15  959, 959 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not

16  contain evidentiary submissions but only plausible allegations of jurisdictional elements." (quotations

17  and citations omitted)).  That is because "[t]he amount in controversy is simply an estimate of the total

18  amount in dispute, not a prospective assessment of defendant's liability."  *Lewis v. Verizon Commc'ns,

19  Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).  "[W]hen a defendant seeks federal-court adjudication, the

20  defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff

21  or questioned by the court."  *Dart Cherokee*, 574 U.S. at 87.  Importantly, a plaintiff seeking to

22  represent a putative class cannot "bind the absent class" through statements aimed to limit their

23  recovery in an effort to "avoid removal to federal court."  *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588,

24  595–96 (2013).

25    23.    Moreover, in assessing whether the amount-in-controversy requirement has been

26  satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury

27  will return a verdict for the plaintiff on all claims made in the complaint.'"  *Campbell v. Vitran Exp.,

28  Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean*

*Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).  In other words, the focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

24.     Although Warby Parker denies that Plaintiff's claims have any merit, Warby Parker avers, for the purposes of meeting the jurisdictional requirements for removal *only*, that if Plaintiff were to prevail on every claim and allegation in his Complaint on behalf of the putative class, the requested monetary recovery would exceed $5 million.  Warby Parker reserves the right to present additional evidence establishing the amount placed in controversy by each of Plaintiff's claims should Plaintiff challenge whether the jurisdictional amount-in-controversy threshold is satisfied.  *See Dart Cherokee*, 574 U.S. at 87–89; *see also Salter*, 974 F.3d at 959 (holding that only a "factual attack" that "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings" requires the removing defendant to "support her jurisdictional allegations with competent proof" (quotations and citations omitted)).  "[W]hen a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied." *Arias*, 936 F.3d at 924.

### 1.     Plaintiff's Allegations Regarding Waiting Time Penalties Place $1.3 Million in Controversy

25.     Plaintiff's claim for waiting time penalties pursuant to California Labor Code section 203 alone puts $1.3 million in controversy.  Plaintiff alleges that he and other putative class members who ended their employment with Warby Parker during the three-year period prior to filing this Complaint[1]—April 11, 2020 to April 11, 2023—are entitled to recovery of "waiting time penalties" pursuant to California Labor Code section 203.  *See* Smith Decl., Ex. B, Compl. ¶¶ 120–27 (Warby Parker "has not tendered payment of wages to" Plaintiff and putative class members "who missed meal and rest breaks, as required by law" and "[t]herefore, as provided by Cal[ifornia] Lab[or] Code § 203"

---

[1]   The statute of limitations for an action under Labor Code section 203 is three years.  Cal. Civ. Proc. Code § 338(a); Cal. Lab. Code § 203(b); *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1396, 1398 (Cal. 2010).

Gibson, Dunn &
Crutcher LLP

Plaintiff and putative class members "whose employment has [ended] . . . demand up to thirty (30) days of pay as a penalty for not paying all wages due at the time of termination.").

26.   If an employer fails to pay all wages due to an employee at the time of termination, as required by California Labor Code section 201, or within 72 hours after resignation, as required by California Labor Code section 202, then the wages "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to a maximum of 30 calendar days.  Cal. Lab. Code § 203.  An employer may not be liable for these penalties if a good faith dispute exists as to whether the wages are owed.  Cal. Code Regs. tit. 8, § 13520.  Further, to be liable for waiting time penalties, an employer's failure to pay wages within the statutory time frame must be *willful*.  *See* Cal. Lab. Code § 203.  "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer *intentionally* fails to pay wages to an employee when those wages are due."  Cal. Code Regs. tit. 8, § 13520 (emphasis added).

27.   To calculate waiting time penalties, the employee's daily rate of pay is multiplied by a maximum of 30 days, depending on the length of delay in receipt of wages.  *See Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998) (holding that the waiting time penalty is "equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days" and noting that the "critical computation" is "the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days"); *Tajonar v. Echosphere, L.L.C.*, 2015 WL 4064642, at *4 (S.D. Cal. July 2, 2015) (similar).  Where final "wages [due] are alleged to have not been paid, the full thirty-days may be used for each of the putative class members" when estimating that amount in controversy under CAFA.  *Marentes v. Key Energy Servs. Cal., Inc.*, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015); *see also Crummie v. CertifiedSafety, Inc.*, 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017) (where a plaintiff alleges "putative class members were owed (and are still owed)" wages, it is "completely reasonable to assume waiting time penalties accrued to the thirty-day limit").

28.   Warby Parker denies that any such penalties are owed to Plaintiff or any putative class members.  However, for purposes of this jurisdictional analysis *only*, Warby Parker relies on Plaintiff's allegations that the penalties are owed.  Plaintiff alleges that Warby Parker "has not tendered payment of wages to [Plaintiff and putative class members] who missed meal and rest breaks, as required by

law."  Smith Decl., Ex. B, Compl. ¶ 126.  Accordingly, Plaintiff alleges that Warby Parker "pay [waiting time] penalt[ies] for not paying all wages due at time of termination for all employees who terminated employment during the" class period.  *Id.*, Compl. ¶ 127.  Further, Plaintiff alleges that "[t]o the extent overtime compensation is determined to be owed to [putative class members] who have terminated their employment . . . these individuals are also entitled to waiting time penalties under" California Labor Code section 203.  *Id.*, Compl. ¶ 106.  Based on these allegations, it is reasonable to assume for the purposes of this jurisdictional analysis only, that each putative class member is entitled to the thirty days' wages.  *See Crummie*, 2017 WL 4544747, at *3.

29.  Approximately 485 non-exempt employees in California ended their employment with Warby Parker Inc. between April 11, 2020 to April 11, 2023.  Kaden Decl. ¶ 4(d).  Of those employees, 165 worked full-time and 320 worked part-time.  *Id.*  The average hourly rate of pay for those 165 full-time employees was $22.21; the average hourly rate of pay for those 320 part-time employees was $16.76.  *Id.* ¶¶ 4(e)–(f).

30.  If, as Plaintiff alleges, individuals who left the employment of Warby Parker during the three years preceding the filing of the Complaint were owed wages and did not receive them, the amount in controversy with respect to the waiting time penalties claim for the non-exempt employees who worked at Warby Parker Inc. in California and ended their employment before April 11, 2023 would be approximately **$1.3 million**, calculated as follows:

| **Full-Time Employees**: | |
| --- | --- |
| $22.21 average hourly rate x 6 hours per day: | $133.26 daily rate[2] |
| $133.26 x 30 days maximum penalty: | $3,997.80 per employee |
| Amount in controversy for full-time employee waiting time penalties, based on Plaintiff's allegations ($3,997.80 x 165 employees): | **$659,637** |
| **Part-Time Employees**: | |
| $16.76 average hourly rate x 4 hours per day: | $67.04 daily rate[3] |
| $67.04 x 30 days maximum penalty: | $2,011.20 per employee |

[2]  This is a conservative estimate based on the fact that full-time Warby Parker Inc. employees are expected to work a minimum of 30 hours per week, but many work more.  *See* Kaden Decl. ¶ 5.

[3]  This is a conservative estimate based on the fact that part-time Warby Parker Inc. employees were scheduled to work shifts of at least four hours, however, many were frequently scheduled for longer shifts.  *See* Kaden Decl. ¶ 6.

| | |
|---|---|
| Amount in controversy for part-time employee waiting time penalties, based on Plaintiff's allegations ($2,011.20 x 320 employees): | **$643,584** |
| Total conservative amount in controversy for waiting time penalties, based on Plaintiff's allegations: | **$1,303,221** |

31.     The amount in controversy alleged by Plaintiff on this claim thus places at least $1.3 million in controversy, and this calculation does not even include penalties allegedly owed to (1) any temporary employees of Warby Parker Inc., or (2) any non-exempt Warby Parker Inc. employees in California who ended their employment after April 11, 2023.

**2.     Plaintiff's Claim for Alleged Violation of California Labor Code Section 226 Places Another $631,050 in Controversy**

32.     Plaintiff's claim for inaccurate wage statements places an additional $631,050 in controversy.  Plaintiff alleges in his Sixth Cause of Action that Warby Parker "knowingly and intentionally failed to comply with" California Labor Code § 226 by "fail[ing] to provide [Plaintiff] and [putative class members] with complete and accurate wage statements which failed to show, among other things, all deductions, the accurate gross wages earned, net wages earned, the total hours worked and all applicably hourly rates in effect during the pay period and the corresponding amount of time worked at each hourly rate, and correct rates of pay for penalty payments or missed meal and rest periods."  Smith Decl., Ex. B, Compl. ¶¶ 117, 119.  On this ground, Plaintiff seeks, among other things, "penalt[ies]" pursuant to California Labor Code section 226.  *Id.*, Compl. ¶ 119, Prayer for Relief.

33.     Under section 226(e)(1), an employee suffering injury as a result of an intentional failure to comply with section 226(a) is entitled to "recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."  Cal. Lab. Code § 226(e)(1).

34.     Warby Parker denies that any such penalties are owed to Plaintiff or putative class members.  However, for purposes of this jurisdictional analysis *only*, Warby Parker relies on Plaintiff's allegations that the penalties are owed.  Plaintiff alleges that Warby Parker "knowingly and intentionally failed to comply with" California Labor Code section 226 by failing to "accurately record

[Plaintiff's and putative class member's] missed meal and rest breaks, or [paying] inaccurate missed meal and rest break premiums, or [failing to] pa[y] for all hours worked" and therefore "failed to provide [Plaintiff] and other [putative class members] with complete and accurate wage statements." Smith Decl., Ex. B, Compl. ¶¶ 117, 119.  Plaintiff's wage statement claim therefore includes derivative allegations of his other claims for missed meal periods and rest breaks and unpaid wages.  Based on those allegations, it is reasonable to assume for the purposes of this jurisdictional analysis only, that all class members received inaccurate wage statements each pay period.  *See Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *5 (C.D. Cal. May 21, 2015) (concluding it is appropriate to use 100% violation rate for wage statement claim where the claim is derivative and where "many violations alleged"); *Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *7 (C.D. Cal. Dec. 3, 2019) (similar).

35.    Warby Parker Inc.'s practice during the one-year period prior to the filing of the Complaint[4] has been to issue pay checks to part-time and full-time, non-exempt employees on a biweekly basis (every other week); as such, a pay period includes two weeks.  Kaden Decl. ¶ 7.

36.    During the one-year period prior to the filing of the Complaint, Defendant Warby Parker Inc. employed approximately 463 part-time and full-time, non-exempt employees in California.  *Id.* ¶ 4(g).  These employees worked an aggregate total of approximately 6,542 pay periods between April 11, 2022 and April 11, 2023.  *Id.* ¶ 4(h).  Based on Plaintiff's allegations, the amount in controversy with respect to Plaintiff's Sixth Cause of Action is approximately **$631,050**, calculated as follows:

| | |
|---|---|
| Penalty for initial pay period for each employee (463 initial pay periods x $50): | $23,150 |
| Penalty for each subsequent pay period for each employee (6,079 subsequent pay periods (6,542 - 463) x $100): | $607,900 |
| Amount in controversy for section 226 claim, based on Plaintiff's allegations: | **$631,050** |

37.    The amount in controversy alleged by Plaintiff on this claim thus places at least $631,050 in controversy, and this calculation does not even include penalties allegedly owed to (1) any temporary employees of Warby Parker Inc., or (2) any non-exempt Warby Parker Inc. employees in

---

[4]  The statute of limitations for this claim is one year.  Cal. Civ. Proc. Code § 340(a).

California after April 11, 2023.

### 3. Plaintiff's Allegations Regarding Meal Periods and Rest Breaks Place At Least an Additional $2.2 Million in Controversy

38.     Plaintiff's claims for failure to provide compliant meal periods and rest breaks place an additional $2.2 million in controversy.  Plaintiff alleges in his Fourth and Fifth Causes of Action that Warby Parker intentionally and improperly denied meal periods and rest breaks to him and the putative class members in violation of California Labor Code sections 226.7 and 512.  Smith Decl., Ex. B, Compl. ¶¶ 107–114.  Plaintiff alleges, among other things, that Warby Parker "failed to provide all the legally required off-duty meal breaks" to Plaintiff and putative class members, including "not fully reliev[ing them of] duty [during] their meal periods" or otherwise causing them to "forfeit[] meal breaks without additional compensation."  *Id.*, Compl. ¶ 108.  Plaintiff further alleges that Warby Parker "required" Plaintiff and putative class members "to work in excess of four (4) hours without being provided ten (10) minute rest periods" and did "not provide[ ] one-hour wages *in lieu* thereof."  *Id.*, Compl. ¶ 112.

39.     During the three-year period[5] prior to the filing of the Complaint, Warby Parker Inc. employed approximately 735 non-exempt employees at its retail locations in California.  Kaden Decl. ¶ 4(a).  Of those employees, 301 worked full-time and 434 worked part-time.  *Id.*  The average hourly rate for those 301 full-time employees was $22.81; the average hourly rate of pay for those 434 part-time employees was $17.00.  *Id.* ¶¶ 4(b)–(c).  Additionally, the 301 full-time employees worked an aggregate total of approximately 9,891 pay periods from April 11, 2020 to April 11, 2023; the 434 part-time employees worked an aggregate total of approximately 5,861 pay periods during that same time period.  *Id.*

40.     Plaintiff failed to specify in his Complaint how many meal periods or rest breaks he claims he or others actually missed and for which he claims they were not properly compensated.  However, Plaintiff alleges the existence of a "strict corporate policy and practice" leading to employees "forfeit[ing]" their breaks and a systemic failure on the part of Warby Parker to schedule employees in a way that would permit him and others to routinely take their meal periods and rest breaks.  *See* Smith

---

[5]   The statute of limitations for an action under California Labor Code Section 226.7 is three years. Cal. Civ. Proc. Code § 338(a); *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007).

Gibson, Dunn &
Crutcher LLP

Decl., Ex. B, Compl. ¶¶ 107–114. Under such a theory, if each of the 301 full-time employees missed just *two* meal periods and *two* rest breaks for which they were not compensated per *work-week*, at the average hourly pay rate of $22.81 for all 9,891 pay periods worked by those employees, and if each of the 434 part-time employees missed just *two* rest breaks per *work-week* at the average hourly pay rate of $17.00 for all 5,861 pay periods, the amount in controversy on this claim would be approximately **$2.2 million**, calculated as follows:

| **Meal Periods (Full-Time Employees)**: | |
|---|---:|
| Conservative estimate of meal period penalties for each employee in each pay period (2 x $22.81 average hourly rate x 2 weeks per pay period): | $91.24 |
| Pay period estimate multiplied by 9,891 total pay periods worked ($91.24 x 9,891): | $902,454 |
| Conservative estimate of amount in controversy for meal period claims as to full-time employees, based on Plaintiff's allegations: | **$902,454** |
| **Rest Breaks (Full-Time Employees)**: | |
| Conservative estimate of rest break penalties for each employee in each pay period (2 x $22.81 average hourly rate x 2 weeks per pay period): | $91.24 |
| Pay period estimate multiplied by 9,891 total pay periods worked ($91.24 x 9,891): | $902,454 |
| Conservative estimate of amount in controversy for rest break claims as to full-time employees, based on Plaintiff's allegations: | **$902,454** |
| **Rest Breaks (Part-Time Employees)**: | |
| Conservative estimate of rest break penalties for each employee in each pay period (2 x $17.00 average hourly rate x 2 weeks per pay period): | $68.00 |
| Pay period estimate multiplied by 5,861 total pay periods worked ($68.00 x 5,861): | $398,548 |
| Conservative estimate of amount in controversy for rest break claims as to part-time employees, based on Plaintiff's allegations: | **$398,548** |
| Total conservative estimate of amount in controversy for meal period and rest break claims, based on Plaintiff's allegations: | **$2,203,456** |

41.     The amount in controversy alleged by Plaintiff on these claims thus places at least $2.2 million in controversy and this calculation does not even include (1) any meal period premiums allegedly owed to part-time employees of Warby Parker Inc., who make up a significant amount of the workforce, (2) temporary employees of Warby Parker Inc., or (3) any meal period premiums allegedly

1    owed to part-time and full-time, non-exempt employees of Warby Parker Inc. in California after

2    April 11, 2023.

3         **4.    Plaintiff's Allegations Regarding Unpaid Overtime Place At Least an Additional**
              **$676,742 in Controversy**

4

5         42.    Plaintiff's claim for underpayment of overtime places at least an additional $676,742 in

6    controversy.  Plaintiff seeks the value of allegedly unpaid wages and overtime.  Smith Decl., Ex. B,

7    Compl. ¶¶ 91–106.  Specifically, Plaintiff alleges in his Complaint that Warby Parker had "a uniform

8    policy and practice" that resulted in Plaintiff and the putative class members to be "denied accurate

9    compensation . . . for overtime worked, including, the overtime work performed in excess of eight (8)

10   hours in a workday, and/or twelve (12) hours in a workday, and/or forty (40) hours in any workweek"

11   during their employment. *See id.*, Compl. ¶ 97.  In particular, Plaintiff alleges that he and putative class

12   members "forfeited . . . overtime compensation by regularly working without their time being

13   accurately recorded and without compensation at the applicable . . . overtime rates" because Warby

14   Parker "required [them] to work without paying them for all the time they were under [Warby Parker's]

15   control," "[s]pecifically [by] requir[ing them] to work while clocked out during what was supposed to

16   be [an] off-duty meal break."  *Id.*, Compl. ¶ 17.  Moreover, Plaintiff alleges that Warby Parker's

17   "policies and practices deprived [Plaintiff] and the other [putative class members] of all . . . overtime,

18   and double time wages owed for the off-the-clock work activities."  *Id.*, Compl. ¶ 32.

19        43.    Based on these allegations, Plaintiff has placed at least an additional $676,742 in

20   controversy, even with an extremely conservative assumption that given these allegations of regular

21   "off-the-clock-work" and work schedules that required work in excess of 40 hours per week, that full-

22   time employees would be owed at least two hours of unpaid overtime per pay period.  For example,

23   the employer in *Jasso v. Money Mart Exp., Inc.*, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012),

24   assumed that each class member missed one hour of overtime pay each week, or two hours per pay

25   period, an estimate that the district court concluded was "reasonable and conservative" based upon the

26   Complaint's allegation that plaintiff and each class member worked over 8 hours a day and 40 hours

27   in a week during their employment, and that defendant had a "uniform policy and systematic scheme

28   of wage abuse."  *Id.*; *see also Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *7 (C.D. Cal. May

9, 2011) (assumption of one hour of overtime per week was proper where the plaintiff alleged "consistent" overtime); *Jimenez v. Allstate Ins. Co.*, 2011 WL 65764, at *3 (C.D. Cal. Jan. 7, 2011) (same).  Warby Parker denies that any additional overtime wages are owed to Plaintiff or putative class members.  However, for purposes of this jurisdictional analysis *only*, Warby Parker relies on Plaintiff's allegations that such wages are owed.

44.  Warby Parker Inc. employed 301 full-time employees in California between April 11, 2020 and April 11, 2023.  Kaden Decl. ¶ 4(a).  Those 301 full time employees worked approximately 9,891 pay periods during that time period. *Id.* ¶ 4(c).  The average hourly rate for those employees was $22.81, *id.*, making their overtime rate at time and one-half equal to $34.21.

45.  If one assumes, consistently with California District Court precedent, just two hours of missed overtime pay per pay period, then the amount in controversy based on Plaintiff's unpaid overtime claim alone is approximately **$676,742**, calculated as follows:

| | |
|---|---|
| Average hourly overtime rate: | $34.21 |
| Conservative estimate of purportedly unpaid overtime hours (9,891 x 2 unpaid overtime hours per pay period): | 19,782 |
| Conservative estimated amount in controversy for overtime claim, based on Plaintiff's allegations ($34.21 x 19,782): | **$676,742** |

46.  The amount in controversy alleged by Plaintiff on these claims thus places at least $676,742 in controversy and this calculation does not even include any unpaid overtime allegedly owed to (1) part-time employees of Warby Parker Inc., who make up a significant amount of the workforce, (2) temporary employees of Warby Parker Inc, or (3) part-time and full-time, non-exempt employees at Warby Parker Inc. in California after April 11, 2023.

**5.  Plaintiff's Reimbursement Allegations Place At Least an Additional $98,910 in Controversy**

47.  Plaintiffs claim for unreimbursed expenses conservatively places at least an additional $98,910 in controversy.  Plaintiff alleges that Warby Parker "fail[ed] to indemnify and reimburse [Plaintiff] and [putative class members] for required expenses incurred in the discharge of their job duties for [Warby Parker's] benefit . . . which included, but were not limited to, costs related to using their personal cellular phones, personal computers and personal home internet all on behalf of and for

Gibson, Dunn & Crutcher LLP

the benefit of" Warby Parker.  Smith Decl., Ex. B, Compl. ¶ 130.  Plaintiff further alleges that Warby Parker "required" Plaintiff and putative class members "to use their personal cellular phones for work-related business," but maintained a "uniform policy, practice and procedure . . . to not reimburse [them] for expenses resulting from [this] us[e]."  *Id.*

48.    California Labor Code section 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer."  Cal. Lab. Code § 2802(a).  For this provision, "the term 'necessary expenditures or losses' shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section."  *Id.* § 2802(c).

49.    Based on Plaintiff's allegations, it is reasonable to assume that Plaintiff will contend that Warby Parker failed to reimburse the full-time members of the putative class for cell phone expenses of at least $10 per pay period per full-time employee, for each pay period in which they were employed with Warby Parker.

50.    It is reasonable to assume that Plaintiff will contend that a monthly reimbursement in the amount of at least $20 was owed.  While Warby Parker does not agree that any monthly reimbursement was owed, district courts have routinely accepted a defendant's reasonable assumption of the monthly reimbursement amount put in controversy by section 2802 allegations involving cell phone use when analyzing federal jurisdiction under CAFA.  *See, e.g.*, *Cavada v. Inter-Cont'l Hotels Grp., Inc.*,  2019 WL 5677846, at *7 (S.D. Cal. Nov. 1, 2019) ($20 per month per was a "reasonable assumption" for purposes of CAFA's amount in controversy requirement); *Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1137 (N.D. Cal. 2020) (finding alternative assumptions of $50 per month or $32.50 per month plus the cost of a phone reasonable for purposes of CAFA's amount in controversy requirement); *Gurzenski v. Delta Air Lines, Inc.*, 2021 WL 5299240, at *4 (C.D. Cal. Nov. 12, 2021) (finding an assumption of 50% of an assumed monthly cell phone bill of $76, i.e. $38 per month, reasonable for purposes of CAFA's amount in controversy requirement); *Vallejo v. Sterigenics U.S., LLC*, 2021 WL 2685348, at *6 (S.D. Cal. June 29, 2021) (finding an assumption of $25 per month reasonable for purposes of CAFA's amount in controversy requirement).  Thus, although Warby Parker

contends that Plaintiff's claims lack merit, it is reasonable for Warby Parker to assume that Plaintiff's allegations put approximately $20 per month (or $10 per pay period) per full-time employee in controversy. To the extent that Plaintiff challenges this amount, Warby Parker reserves all rights to put on evidence in support of it or any other amount according to proof.

51. According to Warby Parker's records, during the period of April 11, 2020 through April 11, 2023, Warby Parker Inc. employed at least 301 full-time employees in California. Kaden Decl. ¶ 4(a). Over that time period, those 301 full-time employees worked an aggregate of approximately 9,891 pay periods. *Id.* ¶ 4(c).

52. Accordingly, if Warby Parker was required to reimburse just these full-time associates, which is a fraction of the putative class Plaintiff purports to represent, *see, e.g.*, Compl. ¶ 5, Plaintiff's reimbursement claims put at least **$98,910** in controversy as shown and calculated below.

| | |
|---|---|
| Assumed per pay period reimbursement rate: | $10.00 |
| Number of non-exempt full-time employees: | 301 |
| Aggregate number of pay periods worked by these employees: | 9,891 |
| Conservative amount in controversy for section 2802 claim ($10.00 pay period reimbursement assumption x 9,891 pay periods): | **$98,910** |

53. The amount in controversy alleged by Plaintiff on these claims thus conservatively places at least $98,910 in controversy and this calculation does not even include any amounts for alleged unreimbursed use of personal computers and personal home internet, nor does it account for any expenses allegedly owed to (1) part-time employees of Warby Parker Inc., who make up a significant amount of the workforce, (2) temporary employees of Warby Parker Inc., or (3) part-time and full-time non-exempt employees at Warby Parker Inc. in California after April 11, 2023.

**6.  Plaintiff's Request for Attorneys' Fees Places Another $351,675 in Controversy**

54. Plaintiff also explicitly seeks attorneys' fees should he succeed on any of the claims in this action. *See* Smith Decl., Ex. B, Compl., Prayer for Relief. Prospective attorneys' fees are properly included in the amount in controversy for purposes of evaluating CAFA jurisdiction. *See Arias*, 936 F.3d at 922 ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."). Attorneys' fees are recoverable for claims for penalties under Labor Code section 226 (Cal. Lab. Code § 226(e)),

unpaid overtime wages (Cal. Lab. Code § 1194(a)), and expense reimbursements (Cal. Lab. Code § 2802(c)).   Under the Ninth Circuit's well-established precedent, 25% of the common fund is generally used as a benchmark for an award of attorneys' fees.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Barcia v. Contain-A-Way, Inc.*, 2009 WL 587844, at *5 (S.D. Cal. Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'" (quoting *Hopson v. Hanesbrands Inc.*, 2008 WL 3385452, at *3 (N.D. Cal. Aug. 8, 2008))); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *12 (C.D. Cal. May 9, 2018) (collecting cases applying a 25% benchmark in CAFA wage and hour cases).

55.     Here Plaintiff has not indicated that he will seek less than 25% of a common fund in attorneys' fees.  *See* Smith Decl., Ex. B., Compl., Prayer for Relief (seeking attorneys' fees).  Indeed, Plaintiff's counsel has sought (and received) more than 25% in attorneys' fees in previous wage and hour cases.  *See, e.g.*, *Schlieser v. Sunrise Senior Living Management, Inc.*, Case No. 8:19-CV-00443-JAK (C.D. Cal. May 16, 2022), Dkt. 97 (order approving 33.33% in attorneys' fees in wage and hour action); *Henry v. Inmotion Entertainment Grp., LLC*, Case No. CGC-18-565643 (S.F. Sup. Ct. April 8, 2019) (order approving 33% in attorneys' fees in wage and hour action); *Mack v. Edward R. Marszal Enters., Inc.*, Case No. 34-2019-00262259 (Sacramento Sept. Ct. June 24, 2021) (order approving 33% in attorneys' fees in wage and hour action).  Warby Parker denies that any such attorneys' fees are owed to Plaintiff or putative class members, but relies on Plaintiff's allegation that he will be entitled to attorneys' fees for purposes of this jurisdictional analysis.  This Court should nevertheless include the potential attorneys' fees in evaluating jurisdiction.  *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700–01 (9th Cir. 2007).

56.     Using a 25% benchmark figure for attorneys' fees for Plaintiff's allegations regarding alleged California Labor Code section 226 violations, unpaid overtime, and expense reimbursements results in estimated attorneys' fees of approximately **$351,675**, calculated as follows:

| | |
|---|---|
| Conservative estimate of amount in controversy from section 226 claim: | $631,050 |
| Conservative estimate of amount in controversy from unpaid overtime claim: | $676,742 |
| Conservative estimate of amount in controversy from expense reimbursement claim: | $98,910 |

Gibson, Dunn &
Crutcher LLP

17

| Attorneys' fees benchmark: | 25% |
|---|---|
| Estimated attorneys' fees in controversy: | **$351,675** |

**7.     In Total, Just Six of Plaintiff's Eight Causes of Action, Including Attorneys' Fees, Place More Than $5.2 Million in Controversy**

57.     Plaintiff's claim for waiting time penalties places more than $1.3 million in controversy, his claim for alleged inaccurate wage statements places another $631,050 in controversy, his claim for alleged missed meal periods and rest breaks places more than $2.2 million in controversy, his claim for alleged unpaid overtime places another $676,742 in controversy, and his claim for alleged expense reimbursement places another $98,910 in controversy.  And Plaintiff's request for attorneys' fees, based on his claims for wage statement violations, unpaid overtime, and expense reimbursements alone, place an additional $351,675 in controversy.  In total, by using conservative assumptions to assess just six of Plaintiff's eight causes of action, the Complaint plainly places **$5.2 million** in controversy:

| | |
|---|---|
| Conservative estimate of amount in controversy from waiting time penalties claim: | $1,303,221 |
| Conservative estimate of amount in controversy from section 226 claim: | $631,050 |
| Conservative estimate of amount in controversy from meal period and rest break claim: | $2,203,456 |
| Conservative estimate of amount in controversy from unpaid overtime claim: | $676,742 |
| Conservative estimate of amount in controversy from expense reimbursement claim: | $98,910 |
| Conservative estimate of amount in controversy from attorneys' fees: | $351,675 |
| Total conservatively estimated amount in controversy: | **$5,265,054** |

58.     The amount-in-controversy figures set forth above are underinclusive of the actual amount placed in controversy by Plaintiff's claims because they are based on conservative assumptions. The assumptions above are conservative because they exclude (a) all non-exempt temporary employees who worked for Warby Parker Inc. in California, (b) any damages or penalties potentially owed to full-time, non-exempt employees at Warby Parker Inc. in California after April 11, 2023, (c) any alleged damages for recovery sought by part-time, non-exempt employees at Warby Parker Inc. in California

for alleged failure to provide meal periods, failure to pay overtime wages, and failure to provide expense reimbursements, and (d) any alleged damages for, among other things, recovery sought for alleged unlawful business practices (First Cause of Action) or failure to pay minimum wages (Second Cause of Action).

59.     Plaintiff's allegations therefore place more than the requisite $5 million in controversy. The jurisdictional amount-in-controversy requirement is met, and removal to this Court is proper under CAFA.

### III.     THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER

60.     Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because:

    a)     This is a civil action which is a class action within the meaning of § 1332(d)(1)(B);

    b)     The action involves a putative class of at least 100 persons as required by § 1332(d)(5)(B);

    c)     The amount in controversy exceeds $5 million, exclusive of interest and costs, as required by § 1332(d)(2); and

    d)     At least one member of the putative class is a citizen of a state different from that of any defendant as required by § 1332(d)(2)(A).

Accordingly, this action is properly removable under 28 U.S.C. §§ 1441, 1446, and 1453.

61.     The United States District Court for Northern District of California is the federal judicial district in which the Santa Clara County Superior Court sits.  This action was originally filed in the Santa Clara County Superior Court, rendering venue in this federal judicial district proper.  28 U.S.C. § 84(c); *see also* 28 U.S.C. § 1441(a).

62.     Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the (a) Summons, (b) Class Action Complaint, (c) Civil Case Cover Sheet, (d) Order Deeming Case Complex and Staying Discovery and Responsive Pleading Deadline, (e) Civil Lawsuit Notice, (f) ADR Stipulation and Order; (g) Proof of Service of Summons on Warby Parker Inc., and (h) Proof of Service of Summons on Warby Parker Retail, Inc. are attached as Exhibits A–H to the Declaration of Katherine V.A. Smith,

Gibson, Dunn &
Crutcher LLP

NOTICE OF REMOVAL OF CLASS ACTION
CASE NO. 5:23-CV-02611

filed concurrently here.  These filings constitute the complete record of all records and proceedings in the state court available to Warby Parker.

63.     Upon filing the Notice of Removal, Warby Parker will furnish written notice to Plaintiff's counsel, and will file and serve a copy of this Notice with the Clerk of the Santa Clara County Superior Court, pursuant to 28 U.S.C. § 1446(d).


DATED: May 26, 2023                          Respectfully submitted,

                                             GIBSON, DUNN & CRUTCHER LLP
                                             HARRIS M. MUFSON
                                             KATHERINE V.A. SMITH
                                             KATIE M. MAGALLANES
                                             JESSICA M. PEARIGEN


                                             By:  /s/ Katherine V.A. Smith
                                                     Katherine V.A. Smith

                                             Attorneys for Defendants
                                             WARBY PARKER INC. (*formerly known as* JAND, INC.) and
                                             WARBY PARKER RETAIL, INC.

NOTICE OF REMOVAL OF CLASS ACTION
CASE NO. 5:23-CV-02611

Gibson, Dunn & Crutcher LLP